

> Signed/Docketed
> October 28, 2011

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 11-13182 MER |
| PLATEAU ENERGY PARTNERS, INC. ) | |
| ) | Chapter 11 |
| ) | |
| Debtor. ) | |

### ORDER GRANTING RELIEF FROM AUTOMATIC STAY

THIS MATTER comes before the Court on the *Motion for Relief from Stay* ("Motion") filed by creditor, Grand Valley Bank (the "Bank") and the *Response to Motion for Relief from Stay* ("Response") filed by the Debtor, Plateau Energy Partners, LLC (the "Debtor"). The Court heard the arguments of counsel, reviewed the pleadings and received evidence in open court and, for the reasons set forth below, grants the requested relief.

### JURISDICTION

This Court has jurisdiction over this matter under 28 U.S.C. § 1334(a) and (b) and 28 U.S.C. § 157(a) and (b)(1). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (G), as it involves administration of the bankruptcy estate and involves a motion to terminate, annul, or modify the automatic stay.

### BACKGROUND

**Procedural Background**

- On February 22, 2011 (the "Petition Date"), the Debtor filed its voluntary petition for bankruptcy relief under chapter 11 of Title 11, the United States Bankruptcy Code (the "Bankruptcy Code").[1]

- On May 19, 2011, the Bank filed its Motion [Docket No. 75]. The Debtor filed its Response to the Motion on June 6, 2011 [Docket No. 87].
- On June 10, 2011, the Bank filed its *Supplement to Motion for Relief from Stay* ("Supplement") [Docket No. 95].

---

[1] Unless otherwise specified, all future statutory references in the text are to the Bankruptcy Code.

- On June 14, 2011, the Debtor filed the *Declaration of Randall Walck, Managing Member of the Debtor in Support of Debtor's Reply to Motion for Relief from Stay* (the "Walck Declaration") [Docket No. 101].

- On June 15, the Debtor filed the *Declaration of Kevin Blair, Managing Member of Merchant Banking Associates, LLC, in Support of Debtor's Reply to Motion for Relief from Stay* (the "Blair Declaration") [Docket No. 102].

- On August 11, 2011, this Court conducted an evidentiary hearing on the Motion, Response, and related pleadings.[2]

**Factual Background**

The Debtor was formed in 2008 for the purpose of acquiring, owning, and developing certain oil and gas and mineral interests located in the Pieceance Basin, near Grand Junction in Mesa County, Colorado. The Debtor has the right to conduct oil and gas exploration operations on approximately 1,400 acres of Mesa County real property pursuant to forty-three oil and gas leases (the "Debtor's Leases"). The Debtor's Leases are unencumbered and are the Debtor's only scheduled assets of any significance, estimated to have a fair market value of approximately $3 million. The Debtor is a limited liability company and Randall K. Walck ("Mr. Walck") and Cindi A. Walck (collectively, the "Walcks") are its managing members.

Included in the Debtor's Leases is a particular oil and gas lease, dated March 18, 2008 (the "March Lease") for approximately 240 acres of the Mesa County property (the "Property"). The Property is owned by the Walcks and serves as collateral for a loan owed by the Walcks to the Bank, on which the Debtor is a co-obligor (the "Debt"). The Debtor has no right, title, or interest in or to the Property other than the March Lease.

The Bank's security interest in the Property arose from the following documents (the "Loan Documents"):

- Promissory Note dated March 18, 2008, payable to the order of the Bank by the Debtor in the original principal amount of $2,412,222.50 ("Note");[3]

- Deed of Trust dated March 18, 2008, and recorded March 25, 2008, at Reception No. 2430404, Book 4629, page 345 in the real estate records of the office of the Clerk and Recorder of Mesa County, Colorado ("Deed of Trust");[4]

---

[2] The Court notes the Bank waived its right to a final hearing within thirty days of the preliminary hearing, which was held on June 15, 2011.

[3] Motion, Ex. B.

[4] Motion, Ex. C.

- Modification/Extension Agreement dated May 4, 2009 (Debtor and Walcks individually as borrowers; Walck Consulting, Inc. as guarantor), and recorded May 19, 2009, at Reception No. 2489446, Book 4854, page 834 in the real estate records of the office of the Clerk and Recorder of Mesa County, Colorado;[5] and

- Modification/Extension Agreement dated December 22, 2009 (Debtor and Walcks individually as borrowers and third party pledgors; Walck Consulting, Inc. as guarantor), and recorded December 29, 2009, at Reception No. 2517389, Book 4960, page 25 in the real estate records of the office of the Clerk and Recorder of Mesa County, Colorado.[6]

The Debtor used the funds from the Note to acquire the Debtor's Leases. The Bank asserts the Debtor is in default in the performance of the terms and conditions of the Loan Documents by failing to make timely payments. Specifically, the Debtor failed to make the balloon payment of $2,162,847.11 due upon maturity of the debt on January 31, 2010. On February 28, 2010, the Bank commenced foreclosure proceedings against the Property.

On September 8, 2010, October 5, 2010, and January 10, 2011, the Debtor three certain payments in the amounts of $9,000, $100,000, and $75,000, respectively, which were applied by the Bank against interest accrued on the Debt since default. On December 23, 2010, $139,800, representing the proceeds of the sale of certain water stock (owned by the Walcks individually) that was pledged as additional security for the Debt, was also credited against accrued interest.

As of the Petition Date, the Debtor was indebted to the Bank in the amount of $2,700,558.40.[7] The amount due continues to accrue interest at the rate of $1,211.89 per day.[8] The Debtor has not made any payments against the Debt since the Petition Date.[9]

The parties agree the Bank's foreclosure on the Property would eliminate the March Lease as well as two corresponding surface agreements providing for access to the Property.[10] Indeed, the parties further agree the loss of that lease would have a catastrophic effect on all of

---

[5] Motion, Ex. D.

[6] Motion, Ex. E.

[7] *See* Joint Stipulation of Facts for Hearing on Relief From Stay, filed August 10, 2011 ("Stipulated Facts"), p. 1.

[8] *Id*.

[9] Additionally, the Walcks or Walck Consulting, Inc. have not made any payments against the Debt since the Petition Date.

[10] *See* COLO. REV. STAT. § 38-38-501. Mr. John Stevenson, representative for the Bank, testified the Bank will not agree to subordinate its interest to that of the Debtor.

the Debtor's remaining leases. Accordingly, the Bank believes its foreclosure may be subject to the automatic stay under § 362(a)(3).[11]

## DISCUSSION

**Grounds for Relief - Section 362(d)**

Section 362(d) sets forth grounds for relief from the automatic stay:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if –

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

Upon filing a motion for relief from the automatic stay, the initial burden of going forward to show grounds warranting the lifting of the stay rests with the creditor.[12] Once grounds are established, the moving party need only prove lack of equity in the property. The burden of proof rests with the debtor as to all other issues.[13]

The Bank bases its request for relief under both subsections of § 362(d) because it asserts (i) the Debtor does not have equity in the Property and it is not necessary for an effective reorganization, and (ii) the Bank lacks adequate protection and the Debtor filed its petition in bad faith. The Court will address the Bank's arguments in turn.

---

[11] At the hearing, the Bank argued for the first time, in the alternative, § 362 does not apply because the Debtor's Leases in this case were assigned to the Bank post-petition and outside of the ordinary course of business. As noted by the Bank, the Court may make an independent determination concerning the application of the stay under those circumstances. Nevertheless, the Court has carefully considered the argument and concludes, under the circumstances and evidence presented, such a determination is unnecessary.

[12] *See In re Anthem Communities*, 267 B.R. 867, 870-871 (Bankr. D. Colo. 2001).

[13] 11 U.S.C. § 362(g).

*1.     Section 362(d)(2) - Lack of Equity and Necessity for an Effective Reorganization*

It is undisputed the Debtor lacks equity in the Property because, as the Debtor concedes, it has no right, title, or interest in the Property. The Property is owned solely by the Walcks. Thus, § 362(d)(2)(A) is satisfied.

The analysis of the second requirement of § 362(d)(2) is more problematic in this case. The burden is on the Debtor to prove the Property is "necessary to an effective reorganization."[14] The Debtor correctly notes the Property provides critical access points and drilling pads and, absent the March Lease and surface agreements, the value of all the Debtor's Leases will likely be reduced to zero.[15] As a result, the Debtor concedes reorganization under those circumstances is impossible. This alone, however, is not sufficient to deny the Bank's Motion.[16]

The seminal case addressing the standard to be applied under § 362(d)(2)(B) is *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.).*[17] Although *Timbers* involved a question under § 362(d)(1), it nevertheless provided the framework and analysis for evaluating relief from stay motions filed under (d)(2). To demonstrate that property is necessary to a successful reorganization, *Timbers* requires:

> not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means, as many lower courts . . . have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time.[18]

In assessing whether a debtor can prove "a reasonable possibility of a successful reorganization within a reasonable time," courts generally apply a lesser standard in determining whether the debtor has met its burden during the 120-day exclusivity period.[19] This lesser standard has been referred to as the "sliding scale" burden of proof. However, "the use of the

---

[14] *See* 11 U.S.C. § 362(g)(2).

[15] Response at p. 3.

[16] *See Matter of Holly's, Inc.*, 140 B.R. 643, 703-704 (Bankr. W.D. Mich. 1992). *See also Albany Partners Ltd. v. Westbrook*, 749 F.2d 670, 673 n.7 (11th Cir. 1984) ("[T]he mere fact that the property is indispensable to the debtor's survival is insufficient.").

[17] 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

[18] *Id.* at 375-76.

[19] *See In re Apex Pharmaceuticals, Inc.*, 103 B.R. 432, 441 (N.D. Ind. 1996).

'sliding scale' burden of proof is intended to benefit debtors who have a *realistic* chance of reorganization but who have not had sufficient time to formulate a confirmable plan."[20]

When relief from stay is requested near the expiration of the exclusivity period, the "sliding scale" or "moving target" burden of proof requires a greater showing than "plausibility."[21] Rather, "a debtor must demonstrate a successful reorganization within a reasonable time is 'probable.'"[22] "Probable" has been defined as having more evidence for than against or supported by evidence which inclines the mind to believe, but leaves some room for doubt or "likely."[23]

Here, the Debtor's proposed plan can be easily summarized.[24] It contemplates a sale of all of the Debtor's assets, comprised solely of the Debtor's Leases, or, alternatively, a refinance of those assets in order for the Debtor to develop and produce natural gas from those leases. The Debtor, however, has not presented evidence sufficient to convince this Court it has a reasonable possibility of either selling the Debtor's Leases– for an amount sufficient to satisfy its obligations to the Bank – or of obtaining a refinance of the leases in an amount sufficient to hold and develop them.

Kevin Blair, an investment banker with Merchant Banking Associates, was retained by the Debtor to evaluate strategic options in an effort to resolve the instant bankruptcy case and make creditors whole in the process. In connection with that engagement, Mr. Blair testified he has, and continues to, investigate sale, refinancing, and joint-venture opportunities on the Debtor's behalf. Mr. Blair determined the estimated value of the Debtor's Leases is between $1 million and $3 million.

In an effort to reach the highest estimated value of the Debtor's Leases, Mr. Blair assembled a complete data package of the Debtor's interests and contacted known, viable candidates. Specifically, he contacted oil and gas "players" in the basin where the Debtor's Leases are located, because of the those leases' short terms and such players' current production in the geographic area. Mr. Blair also investigated debtor-in-possession financing with potential traditional lenders, but found those conversations to be "non-starters" based on the structure of the Debtor's Leases and the Bank's position.

---

[20] *Id*. at 442 (*emphasis added*).

[21] *Matter of Holly's, Inc.*, 140 B.R. at 702.

[22] *Id.*

[23] BLACK'S LAW DICTIONARY 1201 (6th ed. 1990).

[24] The plan (and associated disclosure statement) was not on file at the time of the hearing on the instant matter; however, the Debtor's plan was described, in part, through the testimony of Mr. Walck.

The Debtor entered into no fewer than eleven confidentiality agreements with those prospects, but no offers based on those discussions have been received. Indeed, the only offer received by the Debtor, and presented to the Bank, was from Laramie Energy II, LLC ("Laramie") in the amount of $980,000 (based on $700 per net acre multiplied by 1,400 net undeveloped mineral acres).[25] That offer, however, is subject to the Bank's consent.

The Bank, by its representative, John Stevenson, testified the amount offered by Laramie was insufficient to satisfy the Debtor's and the Walcks' obligations under the Loan Documents. As a result, he stated the Walcks would need to address any deficiency resulting from the sale of the assets against the Debt before the Bank would consent to any such offer. Mr. Stevenson also testified the Bank would not consent to any extension of the March Lease on the Property without the Walcks resolving their debt.

Moreover, the Bank is in a blocking position with respect to the unsecured class vote in any plan because its claim would comprise the overwhelming majority of unsecured debt. On this topic, the Bank made clear it intends to vote against any proposed plan that does not satisfy the Debtor's obligation in full.

2. *Section 362(d)(1) - Lack of Adequate Protection and Bad Faith*

The Bank contends it is entitled to relief from stay under § 362(d)(1) for cause, specifically lack of adequate protection and bad faith. The purpose of providing adequate protection is to insure a creditor receives the value for which it bargained pre-bankruptcy.[26] Adequate protection is, essentially, protection for the creditor to assure its collateral is not depreciating or diminishing in value[27] and is made on a case-by-case basis.[28] The secured creditor "must, therefore, prove this decline in value – or the threat of a decline – in order to establish a *prima facie* case."[29]

The Bank states its interest in the Property is not adequately protected because the Debtor intends to exploit the Property through surface use, which would impair the value of the Bank's interest. Further, according to the Bank, real property values in the local market are falling, and the Property value continues to degrade with no estimate of when the Property may be available to satisfy the Debt, leaving the Bank without adequate protection.

---

[25] Debtor's Ex. Q, p. 2. The offer from Laramie was for all of the Debtor's Leases, not just the March Lease associated with the Property.

[26] *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987).

[27] *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 370 (1988).

[28] *Id.* at 1397.

[29] *In re Elmira Litho, Inc.*, 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994).

In this case, however, the Bank is not a secured creditor of the Debtor. The Bank's only interest in is in the Property, which is owned solely by the Walcks. As a result, the Bank is not entitled to adequate protection and, therefore, the Bank's argument does not form a basis for relief under § 362(d)(1).

The Bank also argues the Debtor filed this case in bad faith.[30] While the Debtor admits it has made some mistakes during the course of this bankruptcy case, it argues the mistakes, errors, and omissions were unintentional, not material to the bankruptcy and not intended to mislead the Court and its creditors. Determining whether a debtor's filing for bankruptcy protection is in good faith requires the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities.[31] Findings of bad faith in proceedings based on §§ 362(d) or 1112(b) have been predicated on certain recurring but non-exclusive patterns, and are based on a conglomerate of factors rather than on any single event.[32]

The factors cited in *Little Creek*, *Nursery Land* and other like cases are not exhaustive. Individual factors, in and of themselves, may not lead to a conclusion that a bankruptcy filing is in bad faith. Bad faith is found when the cumulative effect of these individual factors, viewed in the totality of the circumstances, paints a factual picture leading to the inescapable conclusion that use of the bankruptcy laws by the debtor is inappropriate.[33] This situation exists in the instant case. The evidence this Court finds significant to its conclusion bad faith exists herein includes:

- the filing took place on the eve of the foreclosure sale of the Property;

- the Property is fully encumbered by the lien interest of the Bank;

---

[30] Bad faith as an independent "cause" for relief under § 362 is recognized by the Tenth Circuit. *See In re Nursery Land Development, Inc.*, 91 F.3d 1414, 1416 (10th Cir. 1966); *In re Pacific Rim Investments, LLP*, 243 B.R. 768, 772 (D. Colo. 2000).

[31] *Matter of Little Creek Development Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986).

[32] In this Circuit, several factors have been identified which support a finding of a bad faith filing in a chapter 11 case: (1) the debtor has only one asset; (2) the debtor has only one creditor; (3) the debtor acquired property which was posted for foreclosure and the prior owners had been unsuccessful in defending against the foreclosure; (4) the debtor was revitalized on the eve of foreclosure to acquire the insolvent property; (5) the debtor has no ongoing business or employees; (6) the debtor lacks a reasonable possibility of reorganization; and (7) the chapter 11 filing stopped the foreclosure. *See Nursery Land*, supra at 1416.

[33] *In re Plumberex Specialty Products Inc.,* 311, B.R. 552, 560 (Bankr. C.D. Cal. 2004); *In re Gunnison Ctr. Apts.*, 320 B.R. 391, 400 (Bankr. D. Colo. 2005) (citing *In re Kasdorf*, 64 B.R. 294, 295 (Bankr. D. Colo. 1986)).

- the bankruptcy filing was to avoid the foreclosure on the Walcks' personal interests in the Property;

- Debtor has little, if any, cash flow, and no available sources of income to sustain a plan of reorganization;

- Debtor has no employees other than the Walcks;

- Debtor has relatively few creditors other than the Bank, some of whom are the Walcks themselves, all of which are small in relation to those of the Bank;[34] and

- the chapter 11 filing stopped the Bank's foreclosure on the Property.

Bad faith is also evident in the Debtor's pre- and post-petition transfer of leases. In November 2010, the Debtor assigned all of its interest in the Debtor's Leases to Plateau Production Company, LLC – a limited liability company owned by Mr. Walck. The Mesa County, Colorado property records contain a post-petition assignment from Plateau Production Company, LLC back to the Debtor, executed and recorded on February 23, 2011, the day following the Petition Date. Neither of these assignments were disclosed by the Debtor on its statements and schedules, nor were they disclosed during the Bank's Rule 2004 examination of Randy Walck. This failure to disclose is an indication of bad faith.

As this Court emphasized in *In re Gunnison Ctr. Apts.*,[35] when several of the identified "conglomerate of factors" exist:

Resort to the protection of the bankruptcy laws is not proper under these circumstances because there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation, except according to the debtor's "terminal euphoria." The Sixth Circuit in *Winshall Settlor's Trust,* 758 F.2d at 1137, aptly noted that "[t]he purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state." *See In re Dolton Lodge Trust No. 35188,* 22 B.R. 918, 922 (Bankr.N.D.Ill.1982). "[I]f there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its *raison d'etre* . . . ." *In re Ironsides, Inc.,* 34 B.R. 337, 339 (Bankr.W.D.Ky.1983). Neither the bankruptcy

---

[34] The parties stipulate there are three proofs of claim, other than the proof of claim filed by the Bank, for other unsecured debts. Those claims total $180,000. Stipulated Facts, p. 2. The parties also stipulate the scheduled unsecured debt owed to insiders is $597,167. *Id.* Notwithstanding those debts, the Court is not persuaded its conclusion of bath faith is affected.

[35] 320 B.R. at 400-01.

courts nor the creditors should be subjected to the costs and delays of a bankruptcy proceeding under such conditions.[36]

Based on the above, it is the conclusion of this Court that the within case was filed in bad faith and as a result, relief from the automatic stay is appropriate under § 362(d)(1).[37]

## IV. CONCLUSION

For the above reasons, this Court concludes the Bank is entitled to its requested relief as the Debtor has failed to satisfy its burdens of proof as required by § 362(g). It is therefore

ORDERED that the *Motion for Relief from Stay* filed by Grand Valley Bank is GRANTED.

Dated October 28, 2011

BY THE COURT:

Michael E. Romero
U.S. Bankruptcy Judge

---

[36] *Id.* (quoting *Little Creek Dev. Co.*, 779 F.2d at 1073).

[37] Although the Court's determination the Debtor filed its petition in bad faith relies primarily on those factors set forth in *Nursery Land, Pacific Rim* and *Little Creek*, a Court nevertheless may also consider bad faith factors under § 362(d)(1), showing an intent to abuse the system and the purposes of the reorganization process. *See In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988) (citing *In re Albany Partners, Ltd.* 749 F.2d 670, 674 (11th Cir. 1984).